UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
KEVIN CASEY and DANA GATHARD, as
Trustees of the I.B.E.W. Local No. 25 Pension
Fund,

                    Plaintiffs,              **MEMORANDUM AND ORDER**
                                                            2:18-cv-2421 (DRH)(GRB)

   - against -

TYREE SERVICE CORP., AMINCOR, INC.,
ADVANCED WASTE & WATER
TECHNOLOGY, INC., AMINCOR CONTRACT
ADMINISTRATORS, INC., AMINCOR OTHER
ASSETS, INC., BAKER'S PRIDE, INC.,
CAPSTONE BUSINESS FUNDING, LLC,
CAPSTONE CAPITAL GROUP, LLC,
CAPSTONE CAPITAL MANAGEMENT, INC.,
CAPSTONE CAYMAN SPECIAL LIQUIDITY
FUND, LP, CAPSTONE CREDIT, LLC,
CAPSTONE SPECIAL LIQUIDITY FUND LP,
a/k/a Capstone Special Purpose Fund LP,
ENVIRONMENTAL HOLDING CORP., a/k/a,
Environmental Holdings Corp., METRO
ENVIRONMENTAL SERVICES, LLC, a/k/a
Environmental Quality Services, T-
ENVIRONMENTAL, INC., TYREE
ENVIRONMENTAL CORP., TYREE
EQUIPMENT CORP., and TYREE HOLDINGS
CORP.,

                    Defendants.
---------------------------------------------------------X

**APPEARANCES**

**ARCHER, BYINGTON, GLENNON & LEVINE LLP**
Attorneys for Plaintiff
1 Huntington Quadrangle, Suite 4C10
Melville, NY 11747
By:    Matthew F. Hromadka, Esq.
          John H. Byington, III, Esq.

**BRODY O'CONNOR & O'CONNOR**
Attorney for Defendants
111 John Street, Suite 900
New York, NY 10038
By:   Scott A. Brody, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiffs Kevin Casey and Dana Gathard ("Plaintiffs"), as Trustees of the I.B.E.W. Local No. 25 Pension Fund ("Fund"), brought this action against Defendants Tyree Service Corp. ("Tyree Service"), Amincor, Inc., Advanced Waste & Water Technology, Inc., Amincor Contract Administrators, Inc., Amincor Other Assets, Inc., Baker's Pride, Inc., Capstone Business Funding, LLC, Capstone Capital Group, LLC, Capstone Capital Management, Inc., Capstone Cayman Special Liquidity Fund, LP, Capstone Credit, LLC, Capstone Special Liquidity Fund LP, a/k/a Environmental Quality Services, T-Environmental, Inc., Tyree Environmental Corp., Tyree Equipment Corp., and Tyree Holdings Corp. (collectively, "Defendants") to recover unpaid withdrawal liability pursuant to the Employee Retirement Income Security Act ("ERISA") of 1974, as amended, 29 U.S.C. § 1381 et seq.

Presently before the Court is Defendants' motion to stay pending arbitration. For the reasons explained below, Defendants' motion is granted, this matter is hereby stayed, and the Parties are directed to proceed with arbitration.

## BACKGROUND

The following relevant facts are taken from the Complaint and the Parties' motion papers.

Defendant Tyree Service executed a collective bargaining agreement ("CBA") with I.B.E.W. Local Union No. 25. (Compl. [ECF No. 1] ¶ 29.) Defendants allege that the CBA was in effect from May 1, 2009 to April 30, 2012, with an extension through October 31, 2012.

(Scott A. Brody Aff. [ECF No. 27-1] (hereinafter "Brody Aff.") ¶ 4.)  Pursuant to the CBA, Tyree Service agreed to pay pension contributions to the Fund on behalf of its employees who were covered by the CBA.  (Compl. ¶ 30.)  Under the CBA, Tyree Service was also subject to a Trust Agreement that provided, *inter alia*, that if a contributing employer withdraws from the Fund, it is required to pay withdrawal liability in accordance with ERISA.  (*Id.* ¶ 31.)

On or about October 31, 2012, Tyree Service permanently ceased to have an obligation to contribute to the Fund pursuant to ERISA § 4203(b)(2)(A).  (*Id.* ¶ 32.)  On April 24, 2015, Plaintiffs served notice on Defendant Tyree Service of the Fund's claim for withdrawal liability.  (Brody Aff. ¶ 5.)  On August 25, 2015, Defendant Tyree Service's counsel wrote to Plaintiffs in the context of settlement negotiations related to a separate claim.  (*Id.*)  In the letter, Defendants' counsel told Plaintiffs that Defendant Tyree Service "has agreed to exclude [the Fund's] claim for withdrawal liability from the settlement, [and that] Tyree Service Corp. is of the position that no withdrawal liability is due and owing from it." (P.'s Mem. in Opp. [ECF No. 28-5] at 4.)  Defendants' counsel did not receive any response from Plaintiffs to its letter, or any other communication regarding withdrawal liability.  (*Id.*)  Plaintiffs seem to concede that Defendant Tyree Service's withdrawal liability was discussed during the settlement negotiation, but remained unresolved when the Parties settled their separate claim.  (*See id.*)

The issue of withdrawal liability remained dormant until December 11, 2017, when Plaintiffs wrote a letter regarding the same to Defendant Tyree Service directly, without copying Defendants' counsel.  (Compl. ¶ 6.)  Plaintiffs knew that Defendant Tyree Service was no longer an operating entity by December 2017 and that it was represented by counsel.  (*Id.*)  Plaintiffs sent another letter to Defendant Tyree Service concerning withdrawal liability on February 22, 2018.  (*Id.*)  Another one of the Defendants passed this second letter on to Defendants' counsel.

(*Id.*) On April 18, 2018, Defendants' counsel wrote Plaintiffs' counsel asking the Fund to re-evaluate its withdrawal liability claim and advised Plaintiffs that Defendant Tyree Service had ceased operations. (*Id.* ¶ 7.) Plaintiffs' counsel claims that it did not receive this letter, and commenced the instant action on April 24, 2018. (*Id.*) Plaintiffs later clarified in their Memorandum in Opposition that they received the letter on April 26, 2018. (Mem. in Opp. at 6.) Defendants initiated arbitration by serving a demand for arbitration on Plaintiffs on or before August 2, 2018. (*Id.*) By letter dated August 8, 2018, Plaintiffs notified the American Arbitration Association that it did not consent to arbitration. (*Id.*) On September 14, 2018, Defendants moved to stay this action and compel arbitration.

## DISCUSSION

I.   *The Parties' Arguments*

In their motion for a stay, Defendants argue that Plaintiffs' failure to respond to counsel's letters requesting that the Fund reevaluate the withdrawal liability means that the time to file for arbitration was never triggered. (Def.'s Mem. in Supp. [ECF No. 27-13] at 3.) Plaintiffs aver in their opposition that Defendants failure to timely request review of the Fund's first demand for withdrawal liability means that Defendants waived any right to arbitrate. (Mem. in Opp. at 1.)

II.   *Arbitration Under ERISA*

ERISA § 4219(b)(2)(A) provides in relevant part that:

No later than 90 days after the employer receives the notice [regarding withdrawal liability], the employer—
> (i) may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments,
> (ii) may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and
> (iii) may furnish any additional relevant information to the plan sponsor.

29 U.S.C. § 1399(b)(2)(A). Once the plan sponsor has received the employer's request to review its determination,

> the plan sponsor shall notify the employer of—
> (i) the plan sponsor's decision,
> (ii) the basis for the decision, and
> (iii) the reason for any change in the determination of the employer's liability or schedule of liability payments.

*Id.* § 1399(b)(2)(B). ERISA does not provide a time limit for the plan sponsor to respond to the employer.

ERISA further provides that "[a]ny dispute between an employer and the plan sponsor . . . concerning a determination made under sections 1381 and 1399 of this title shall be resolved through arbitration." *Id.* § 1401(a)(1). Either party may initiate the arbitration within sixty days of the earlier of: (A) the notification to the employer under § 1399(b)(2)(B), or (B) 120 days after the date of the employer's request under § 1399(b)(2)(A). *Id.*

"Section 1401(a)(1)(B) specifically contemplates a plan sponsor's failure to respond and enables the employer to initiate arbitration, without providing any other form of relief[.]" *PACE Industry Union-Management Pension Fund v. Troy Rubber Engraving Co.*, 805 F. Supp. 2d 451, 460 (M.D. Tenn. 2011). As quoted above, § 1401 allows an employer to initiate arbitration 180 days following the request for review, even if the plan sponsor does not respond to the request. This provision permits the employer to initiate arbitration irrespective of the Fund's actions or failure to act, or the Fund's reasons for such actions. *Rao v. Prest Metals*, 149 F. Supp. 2d 1, 10 (E.D.N.Y. 2001) ("even accepting [the employer's] contention that the Fund's letter . . . was not a proper response to its request for review, [§1401(a)(1)] subsection (B) would then apply")). Therefore, an employer's time to initiate arbitration begins to run when it sends the request for review, and a sponsor's failure to respond does not toll the employer's 180 days to do so.

Finally, the Second Circuit has explained that "there is a strong presumption in favor of arbitration[, and] waiver of the right to arbitration is not to be lightly inferred." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104–05 (2d Cir. 2002) (alterations in original); *Schreiber v. Friedman*, 2017 WL 5564114 at *7 (E.D.N.Y. March 31, 2017) (quoting the same). This preference for arbitration "[has] led to its corollary that any doubts concerning whether there has been a waiver are resolved in favor of arbitration." *Trustees of Local 531 Pension Fund v. Al Turi Landfill, Inc.*, 2010 WL 11627389, at *3 (E.D.N.Y. Sept. 20, 2010) (citing *PPG Industries, Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997)).

III. Defendants' Motion to Stay is Granted

Defendant Tyree Service asserts that Plaintiffs' failure to respond to its August 25, 2015 letter requesting review means that the time to initiate arbitration was never triggered. As explained above, this reasoning has been rejected by judges in the Eastern District of New York and in other district courts. As such, the Court is unpersuaded by this argument, and the Court need not settle the Parties' dispute over whether the August 25, 2015 letter actually contained a request to review.

On the other hand, this case is complicated by the conceded fact that Defendant Tyree Service's withdrawal liability was discussed pursuant to a separate settlement negotiation, during which discussion Defendants maintained that they were not liable and Plaintiffs never responded to indicate that they would continue to pursue such claim. Moreover, after such settlement, Plaintiffs left the issue of withdrawal liability dormant for well over a year. Plaintiffs never took any action during this period, even though Defendants should have been making payments pursuant to 29 U.S.C. §§ 1399 or 1401 if they were indeed responsible for withdrawal liability.

Plaintiffs do not provide any insight into the settlement negotiations, nor do they explain why they left the issue dormant for so long thereafter.  In light of these facts, Defendant Tyree Service seems to have come to the logical conclusion in 2015 that it need not initiate arbitration proceedings because the issue of withdrawal liability had been dropped during the settlement negotiations.  As Plaintiffs did nothing to dispel Defendants' assumption, the Court finds that it would be unjust to impose the 180-day time limit on the August 2015 response in this unique circumstance.

It is likewise concerning that when Plaintiffs sent the February 22, 2018 letter regarding withdrawal liability, they only mailed it to Defendant Tyree Service even though Plaintiffs were aware that such Defendant was a nonoperating entity at the time and was represented by counsel.  Plaintiffs had even negotiated the aforementioned settlement with Defendants' counsel three years earlier.  Thus, it would likewise be problematic to expect Defendant Tyree Service to respond to Plaintiffs' letter with a request to review in 90 days when its counsel never received such letter.  *See, e.g.*, *Division 1181 Amalgamated Transit Union—New York Employees Pension Fund v. Logan Transportation Systems, Inc.*, 293 F. Supp. 3d 336, 347 (E.D.N.Y 2018) ("[T]his is not a situation where [Defendant] received the letter and sat on its rights; instead, plaintiffs' idiosyncratic actions contributed to the lack of notice").  Plaintiffs sent another letter in February 2018, which Defendants' counsel received and responded to in April 2018.  Defendants' April 2018 response to Plaintiffs' February 2018 letter was within the 90-day window provided for by ERISA.  When Plaintiffs failed to respond and instead commenced the instant litigation, Defendants initiated arbitration in August 2018.  As the initial letter regarding withdrawal liability in April 2015 became confounded by the settlement negotiations, and the second letter in December 2017 was improperly sent solely to a defunct entity that Plaintiffs knew were

represented by counsel, only the February 2018 letter will be considered. While the February 2018 letter was also sent exclusively to the then-defunct Defendant Tyree Service, it was "forwarded to counsel by one of the other defendants herein"—which the first letter was not—and counsel responded to that correspondence, thereby triggering the time to initiate arbitration.

As quoted above, "any doubts concerning whether there has been a waiver [of the right to arbitration] are resolved in favor of arbitration." *Trustees of Local 531 Pension Fund*, 2010 WL 11627389, at *3. Applying this principle to the facts at bar, the question of Defendant Tyree Service's waiver is hereby resolved in favor of arbitration in light of Plaintiffs' failure to clarify their position regarding withdrawal liability during a separate settlement negotiation, and Plaintiffs' failure to properly send the February 2017 letter concerning withdrawal liability to Defendants' counsel when Defendant Tyree Service was known to be a defunct entity.

*IV. The Control Group*

The Parties raised one final issue that the Court will briefly address. There is a dispute as to which of the Defendants belong to the control group that is allegedly statutorily liable for the withdrawal penalty. While there is some question as to whether this may be resolved in arbitration, all the Defendants have consented to proceed to arbitration at this stage. (Mem. in Supp. at 7.) If the arbitrator cannot determine which Defendants are in the control group, then the Parties can return to this forum if Defendants' withdrawal liability is decided in Plaintiffs' favor.

**CONCLUSION**

For the reasons set forth above, Defendants' motion to stay this matter is granted and the Parties are directed to arbitrate their dispute over Defendants' withdrawal liability. Pursuant to 29 U.S.C. § 1401(d), Defendants are further directed to begin making withdrawal payments in

accordance with the requirements thereunder. The Parties are directed to file a status report or a stipulation of dismissal within 30 days of the arbitrator's decision.

**SO ORDERED.**

Dated: Central Islip, New York
　　　　May 15, 2019

　　　　　　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　　　　　　Denis R. Hurley
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge